**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AMWAY GLOBAL,

      Petitioner,

v.

ORRIN WOODWARD, *et al.,*

      Respondents.

_____/

Case No. 09-12946

Hon. Gerald E. Rosen

## OPINION AND ORDER DENYING RESPONDENTS' MOTION FOR CHANGE OF VENUE OR FOR STAY

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ November 20, 2009 _____

PRESENT: Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

In a petition filed on July 24, 2009, Petitioner Amway Global seeks an order confirming an arbitration award entered that same day in favor of Petitioner and against Respondents Orrin Woodward, Laurie Woodward, Chris Brady, Terri Brady, Tim Marks, and Amy Marks. Through the present motion filed on August 17, 2009, Respondents request that this action be transferred to the United States District Court for the District of Utah, where purportedly related litigation has been pending for over a year. Alternatively, Respondents ask that this action be stayed until the Utah district court rules on certain pending motions. For the reasons stated below, the Court readily concludes that neither a transfer nor a stay is warranted.

# I.  PROCEDURAL BACKGROUND

Although a full account of the parties' litigation history would rival *War and Peace* in length, if not in literary merit, a brief summary suffices for present purposes.  In October of 2008, Petitioner's predecessor-in-interest, Quixtar Inc., brought suit in this Court to compel a number of parties, including the six Respondents here, to return to arbitration proceedings that Quixtar had commenced in August of 2007 (the "JAMS Arbitration").  In a December 17, 2008 ruling, this Court determined that the parties should resume the JAMS Arbitration, *see Quixtar Inc. v. Brady,* Nos. 08-14346, 08-14347, 2008 WL 5386774 (E.D. Mich. Dec. 17, 2008), and the Sixth Circuit affirmed this decision on appeal, *see Quixtar, Inc. v. Brady,* No. 08-2629, 328 F. App'x 317 (6th Cir. Apr. 30, 2009).

While the JAMS Arbitration remained ongoing, Petitioner became embroiled in litigation with MonaVie, Petitioner's competitor in the sale and distribution of health and beauty products.  Specifically, Petitioner and MonaVie brought suit against each other in March of 2008 in the United States District Court for the District of Utah, with Petitioner evidently alleging that MonaVie had tortiously interfered with Petitioner's relationships with certain of its former independent business owners ("IBOs"), and MonaVie apparently countering that certain provisions in Petitioner's agreements with its former IBOs were unenforceable.  A year later, in March of 2009, a group of former IBOs who had become MonaVie distributors filed a putative class action complaint against Petitioner in the Utah district court, advancing similar challenges to the enforceability of

2

Petitioner's agreements with its IBOs.  As former IBOs who now distribute MonaVie products, the six Respondents before this Court evidently fall within the class defined in the Utah class action complaint.  The Utah court consolidated these three cases — the suits brought by Petitioner and MonaVie and the putative class action brought by the former IBOs — and this consolidated Utah litigation remains pending.

Following this Court's December 2008 order directing the parties to return to the JAMS Arbitration, the parties participated in a 16-day arbitration in Detroit, and the arbitrator issued a July 24, 2009 award in favor of Petitioner and against Respondents. That same day (a Friday), Petitioner commenced the present action in this Court, requesting an order confirming the arbitrator's award under section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.

The following Monday, July 27, 2009, Respondents commenced an action in the Utah district court, seeking an order vacating the arbitrator's award.  They also have moved to consolidate this latest Utah suit with the existing Utah litigation, and this request remains pending.  Through the present motion filed on August 17, 2009, Respondents request that the suit before this Court be transferred to the Utah district court, where it then could be consolidated with the pending Utah litigation.  Alternatively, they ask the Court to stay this case until the Utah court decides certain issues which, in their view, will directly impact the parties' claims and defenses in this action.

## II. ANALYSIS

**A.     The Standards Governing Respondents' Request to Transfer Venue**

3

Respondents' motion for a change of venue is brought under 28 U.S.C. § 1404(a), which authorizes a federal district court to transfer a suit "to any other district or division where it might have been brought" as warranted "[f]or the convenience of parties and witnesses, in the interest of justice." This statutory provision grants the federal district courts considerable discretion to transfer a case in order to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964) (internal quotation marks and citation omitted). In deciding whether to exercise this discretion, however, a court must give "substantial deference" to the plaintiff's choice of forum, and the party seeking a transfer "bears the burden of demonstrating that fairness and practicality strongly favor the forum to which transfer is sought." *Audi AG & Volkswagon of America, Inc. v. D'Amato,* 341 F. Supp.2d 734, 749-50 (E.D. Mich. 2004) (internal quotation marks and citations omitted).

Under the plain language of § 1404(a), a change of venue is permitted only if three criteria are satisfied: (1) that the action could have been brought in the transferee district; (2) that a transfer serves the interest of justice; and (3) that transfer is for the convenience of the witnesses and parties. *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). Petitioner evidently does not dispute that this suit could have been brought in the Utah district court. *See Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.,* 529 U.S. 193, 195, 120 S. Ct. 1331, 1334 (2000) (holding that a motion under the FAA to confirm, vacate, or modify an arbitration award may be brought "either where the award was made or in any district proper under the general venue statute," 28

4

U.S.C. § 1391).  Thus, only the remaining two statutory criteria are at issue.  In addressing these statutory requirements, the courts have considered a number of factors, including "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice." *Audi AG,* 341 F. Supp.2d at 749 (internal quotation marks and citations omitted).  This list is not exhaustive, however, and "the Court may consider any factor that may make any eventual trial easy, expeditious, and inexpensive." *Audi AG,* 341 F. Supp.2d at 749 (internal quotation marks and citations omitted).

## B.   None of the Relevant Considerations Favors a Change of Venue under 28 U.S.C. § 1404.

Respondents' request for a change of venue rests almost exclusively on the premise that the parties before the federal district court in Utah have already presented evidence and argument on "identical issues" to those implicated in the present suit, with the Utah court purportedly "poised to decide" these issues.  (Respondents' Motion, Br. in Support at 12-13.)  Under these circumstances, Respondents contend that it would be a waste of judicial resources for this Court to insist upon a "duplicative" round of briefing in the present action, and they further warn that "retaining the case [in this Court] could lead to inconsistent and irreconcilable results."  (*Id.* at 13.)  As explained below, the Court finds that Respondents' argument is flawed in its initial premise, and that, more

5

generally, they have failed to identify a basis for disturbing Petitioner's choice of forum.

Turning first to the various factors that attempt to gauge the convenience of the parties and witnesses, Petitioner correctly observes that these factors are entitled to little or no weight under the particular circumstances presented here. This is not a case in which the parties will proceed through the usual course of discovery, motion practice, and trial. Rather, the only question before this Court is whether to confirm or vacate the arbitrator's award, and this matter will be resolved on cross-motions, without the need for discovery, witnesses, or an evidentiary hearing. Indeed, the parties have already filed these cross-motions, without any suggestion of a need to take discovery or any request for an evidentiary hearing. Consequently, if convenience is an issue at all, it could only be the convenience of counsel — and, as Petitioner notes, Respondents' counsel is located in Detroit, with offices across the street from the courthouse.

Even if the Court were to consider the convenience of the parties, this factor would not favor the District of Utah over the Eastern District of Michigan. The parties participated in extensive arbitration proceedings held in this District. At the time these proceedings began, Respondents were all residents of Michigan, and they subsequently moved to Florida, not Utah. Moreover, Petitioner points out that it was Respondents who selected Detroit as the forum for arbitration, as opposed to Petitioner's preferred locations of Grand Rapids, Michigan (near Petitioner's headquarters) or Washington, D.C. Finally, while Respondents commenced a suit in the District of Utah shortly after the present action was filed, their connection to Utah prior to that time consisted solely of their status

6

as members of a putative class that has yet to be certified.  This record surely provides no basis for overriding Petitioner's selection of the Eastern District of Michigan.

Accordingly, if Respondents' request for a change of venue were to be granted, it could only be based upon the interests of justice.  As noted, Respondents' argument on this point rests almost exclusively upon notions of judicial economy.  In particular, Respondents contend that the pending litigation before the Utah district court involves "identical issues," (Respondents' Motion, Br. in Support at 12), and they suggest that the Utah court is well along the path to addressing and resolving these issues.  Here, in contrast, the parties are still in the initial stage of briefing on their cross-motions to confirm or vacate the arbitrator's award.  It follows, in Respondents' view, that "the submission of extensive evidence and briefing duplicative of that already pending before the Utah court and awaiting decision will unquestionably waste judicial and party resources." (*Id.* at 13.)

The short answer to this contention is that the issues presented in this case and in the Utah litigation are ***not*** the same.  Rather, the questions before the two courts differ in one important respect:  the dispute between Petitioner and Respondents has ***already been arbitrated,*** while the Utah court is being asked to decide the threshold question whether the members of the putative class of former IBOs can be compelled to arbitrate their disputes with Petitioner.  Indeed, it was precisely because the arbitration between Petitioner and Respondents was already underway that this Court determined, in the earlier suit brought by Petitioner, that it should not reach the issue of arbitrability, and

7

that the parties should instead return to the JAMS Arbitration and seek judicial review
only after that proceeding reached its conclusion.

This important distinction has the potential, at least, to make all the difference in
the decisions reached in this and the Utah litigation.  As this Court explained in the earlier
suit brought by Petitioner, once an arbitrator has been called upon to decide the issue of
arbitrability (which occurred here), this decision is potentially subject to only deferential
judicial review, at least so long as the parties can be "deemed to have submitted the issue
of arbitrability to the arbitrator 'without reservation.'"  *Quixtar,* 2008 WL 5386774, at
*10 (quoting *Cleveland Electric Illuminating Co. v. Utility Workers Union, Local 270,*
440 F.3d 809, 813 (6th Cir. 2006)).  In the Utah litigation, by contrast, the underlying
disputes between Petitioner and its former IBOs have yet to be arbitrated, with the latter
seeking a judicial declaration that the arbitration provisions in their contracts with
Petitioner are unenforceable as a matter of law.  It follows that the Utah court has not
been called upon to review an arbitrator's decision, whether on arbitrability or any other
issue, much less to decide what level of deference, if any, to give such a decision.

Because of this important distinction in the procedural postures — and, hence, the
questions presented — in this case and the Utah litigation, it can properly be said that this
Court has had a greater opportunity to consider the issues upon which the outcome of this
case is likely to turn.  In the earlier round of litigation between the parties, this Court
addressed, albeit without deciding, at least two issues that feature prominently in the
parties' cross-motions in the present suit — namely, whether Respondents have waived

8

their opportunity for independent judicial review of the question of arbitrability, and what standard this Court should apply in reviewing the arbitrator's decisions.  The Sixth Circuit also considered the issue of waiver — again, however, without deciding it — in its decision affirming this Court's ruling.  Certainly, then, the Utah district court is no further along in resolving these questions, which were not even presented in the Utah litigation until Respondents commenced their recent suit to vacate the arbitrator's award — just days after Petitioner brought the very same issues before this Court in the present suit to confirm the arbitrator's award.

Apart from these considerations of convenience and judicial economy — none of which, as explained, supports the transfer of this case to the Utah district court — Respondents' request for a change of venue also runs afoul of the "first-to-file" rule, a "well-established doctrine that encourages comity among federal courts of equal rank." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 551 (6th Cir. 2007) (internal quotation marks and citations omitted).  This rule "provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment."  *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.,* No. 00-3183, 16 F. App'x 433, 437 (6th Cir. July 31, 2001) (internal quotation marks and citation omitted).  This rule plainly is applicable here, where Petitioner's action in this District and Respondents' suit in the Utah district court are simply two sides of the same coin, featuring the very same parties and issues, and where the action before this Court was

9

filed first — albeit only by three days, separated by a weekend.

Respondents recognize that the first-to-file rule is potentially applicable here, but they suggest various reasons why the Court should decline to apply it. First, they correctly observe that it is "not a strict rule," and that "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands." *Certified Restoration Dry Cleaning Network,* 511 F.3d at 551 (internal quotation marks and citations omitted). Respondents then assert that it would be inequitable to apply the first-to-file rule here, where (i) there was a negligible three-day difference between Petitioner's commencement of this action and their filing of suit in Utah, and (ii) Petitioner's negligible three-day advantage was attributable, in Respondents' view, to an unseemly combination of a race to the courthouse and forum-shopping.

The Court need not decide whether the first-to-file rule alone would warrant the denial of Respondents' request for a change of venue, because this rule merely confirms the Court's conclusion that transfer would not be appropriate. Respondents' charge of a "race to the courthouse" holds little sway with the Court, where there can hardly be any doubt — based on a procedural history replete with examples on both sides of litigiousness, forum-shopping, and a tendency to multiply the proceedings — that Respondents would have raced to the Utah courthouse in precisely the same fashion, regardless of whether Petitioner had commenced the present suit when it did or a few days later. *See X-Rite, Inc. v. Volk,* No. 08-264, 2008 WL 1913926, at *2 (W.D. Mich. Apr. 28, 2008) (observing that while the first-to-file rule "has the natural tendency to

10

encourage a race to the courthouse, . . . merely participating in such a race is not a sufficient reason to depart from the rule").  Similarly, Petitioner's selection of the Eastern District of Michigan hardly raises suspicions of nefarious "forum-shopping" — to the contrary, it was quite reasonable to choose the District in which the JAMS Arbitration was conducted, *see* 9 U.S.C. § 9 (providing that, in the absence of an agreement between the parties specifying a different court, an application for confirmation of an arbitration award "may be made to the United States court in and for the district within which such award was made"), as well as the Court in which the parties had previously litigated issues arising from the arbitration proceeding.  In short, the Court fails to perceive any inequity in applying the first-to-file rule here.

Indeed, Petitioner correctly observes that the litigation before this Court could properly be viewed as "first" in a larger sense, even if Petitioner had not won the parties' most recent race to the courthouse.  While the earlier suit before this Court was terminated pending the conclusion of the JAMS Arbitration, the present action nonetheless may reasonably be considered a continuation of the prior litigation, in the sense that both suits involve issues arising in the course of the arbitration proceeding. Moreover, and as explained earlier, this Court's decision in the earlier suit at least touched upon, without deciding, certain of the issues that are now squarely presented in the current action.  To the extent that both this and the prior suit can be viewed as part of an overarching effort to secure some degree of judicial oversight or scrutiny of the JAMS Arbitration — an effort in which both sides participated, as Respondents sought in the

11

prior suit to disengage from the arbitration process, while Petitioner sought a return to this process — this Court's involvement with the arbitration proceeding surely predates, by nearly a year, the Utah district court's relatively recent involvement with issues arising from the JAMS Arbitration. This consideration further buttresses the Court's conclusion that a change of venue would not be appropriate.

Finally, as an alternative to transfer, Respondents propose that this action be stayed until the Utah district court has ruled on the issues on which it has heard argument to date. Yet, as explained earlier, these issues simply are not the same as the questions presented in the case before this Court. Accordingly, nothing would be gained by awaiting a ruling from the Utah court.[1]

### III. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Respondents' August 17, 2009 motion for change of venue or for stay (docket #23) is DENIED.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  November 20, 2009

---

[1]Of course, to the extent that the Utah court issues a ruling that a party views as relevant to the matters pending before this Court, any such ruling may be brought to the Court's attention through an appropriate filing.

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 20, 2009, by electronic and/or ordinary mail.

s/Ruth Brissaud
Case Manager